UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

**SIAVASH ZARGARI**,

    Plaintiff,
vs.

**UNITED STATES OF AMERICA**,
*et al.*,

    Defendants.
                                  /

## ORDER

**THIS CAUSE** came before the Court on Defendants, United States of America (the "Government"), Jorge Miyar ("Miyar"), and Alex Tiguy's ("Tiguy['s]") (collectively, the "Federal Defendants[']") Motion to Dismiss Complaint ("Motion") [ECF No. 54], filed on February 27, 2014. Plaintiff, Siavash Zargari ("Zargari") submitted his *pro se* Response to Federal Defendants' Motion to Dismiss ("Response") [ECF No. 57] on March 11, 2014. The Federal Defendants filed their Reply . . . ("Reply") [ECF No. 59] on March 18, 2014. The Court has carefully considered the parties' written submissions, the Motion, and applicable law.

### I.    BACKGROUND[1]

This case arises out of Zargari's wrongful arrest and criminal prosecution for various federal criminal violations. (*See* Am. Compl. ¶¶ 13, 15). Zargari was a principal of K & S Entertainment. (*See id.* ¶ 19). K & S Entertainment operated a business called Tangia Restaurant and Lounge and leased a portion of its premises to Club Tangia. (*See id.* ¶ 21).

---

[1] The allegations of Zargari's Amended Complaint for Damages and Demand for Jury Trial ("Amended Complaint") [ECF No. 5] are taken as true.

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

Ciao Miami Beach, LLC, a Florida corporation having Albert Takhalov ("Takhalov") as its principal, operated Club Tangia. (*See id.* ¶ 19). Tahkalov and Zargari were criminal co-defendants. (*See id.*). Zargari "was never a principal, agent, or employee of Club Tangia or Cia Miami Beach, LLC." (*Id.*).

Sometime in March 2010, the Federal Bureau of Investigation (the "FBI") began a covert investigation into several clubs in Miami Beach — including Club Tangia — that were allegedly defrauding their customers and falsely billing customers for goods and services they did not purchase. (*See id.* ¶¶ 18, 19). Defendants Miyar and Tiguy, both FBI agents, were part of the investigation into Club Tangia. (*See id.* ¶¶ 8, 9, 32). Defendant Luis King ("King"), a City of Miami Beach police officer, worked with the FBI on the Club Tangia operation as an undercover agent. (*Id.* ¶ 7).

On April 5, 2011, after over a year of investigation into the allegedly fraudulent activities at Club Tangia and other clubs in Miami Beach, Tiguy arrested Zargari. (*See id.* ¶¶ 13, 18). Zargari was charged with four counts of wire fraud, one count of conspiracy to commit wire fraud, and one count of conspiracy to defraud the United States Department of Homeland Security. (*See id.* ¶ 13).

The Amended Complaint describes several wrongful acts purportedly committed by King, Miyar, and Tiguy in order to arrest and prosecute Zargari. (*See generally id.*). King fabricated a Miami Beach Police report dated March 10, 2011, which "falsely stated that police arrested a Club Tangia customer for not paying for his beverages." (*Id.* ¶ 38). "The fabricated report was made, in part, to falsely tie Zargari to that 'victimized' customer and support the

2

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

decision to arrest and prosecute Zargari." (*Id.*). King also claimed to have overheard Zargari and Takhalov laughing about giving customers shots of vodka to get them drunk, while giving the female Club Tangia employees who brought the customers into the Club shots of water, although the customers were buying those women (and were charged for) vodka shots. (*See id.* ¶ 39).

King made other false accusations, stating Zargari "took a cell phone from a victim at the club and [Zargari] later stated that he had done so in order to use it as evidence against the victim challenging the charges with his credit card company." (*Id.* ¶ 36). Miyar corroborated the story, "falsely indicating to prosecutors" Zargari told King Zargari had stolen the cellular phone of Messimo Furtan, a Club Tangia customer. (*Id.* ¶ 37). Tiguy is purported to have "intentionally edited a video showing [Takhalov] putting one thousand dollars in cash on a bar (which the FBI alleged was bribery money) and showing Zargari appearing at the same bar." (*Id.* ¶ 42). This video, which was edited "to make it appear [as though] Zargari appeared at [the] bar immediately after Takhalov put the cash on the bar," was used "to support probable cause to arrest/prosecute Zargari." (*Id.* (alterations added; emphasis omitted)). Further, Tiguy "signed a probable cause affidavit that he knew contained false statements" to support the arrest and prosecution of Zargari. (*Id.* ¶ 43).

On December 26, 2012, Zargari was acquitted of all charges. (*See id.* ¶ 15). Zargari's Amended Complaint contains six counts: (Count I) a violation of the Federal Tort Claims Act ("FTCA") against the Government; (Count II) false arrest and malicious prosecution against Tiguy for violations of the Fourth and Fifth Amendments; (Count III) false arrest and malicious

3

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

prosecution against Miyar for violations of the Fourth and Fifth Amendments; (Count IV) false arrest and malicious prosecution against King for violations of the Fourth and Fifth Amendments; (Count V) malicious prosecution against King pursuant to 42 U.S.C. section 1983; and (Count VI) malicious prosecution against King pursuant to Florida common law. (*See generally* Am. Compl.). The Federal Defendants seek dismissal of Counts I, II, and III of the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). (*See generally* Mot.).

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). To meet the "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

CASE NO.   13-23806-CIV-ALTONAGA/O'Sullivan

B.     **Federal Rule of Civil Procedure 12(b)(1)**

Subject matter jurisdiction must be established before the case can proceed on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). This is because "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It is presumed that a federal court lacks jurisdiction in a particular case until the plaintiff demonstrates the court has jurisdiction over the subject matter. *See id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182–183 (1936)). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case . . . ." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (citations omitted).

Attacks on subject matter jurisdiction under Rule 12(b)(1) may be either facial or factual. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Like a Rule 12(b)(6) motion, "[a] 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true . . . ." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citation omitted). Factual attacks "challenge[] the existence of subject matter jurisdiction in fact, . . . and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (citation omitted). The Federal Defendants' Motion is a factual attack to the Court's jurisdiction.

5

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

## III. ANALYSIS

Tiguy and Miyar contend the Amended Complaint "fails to state sufficient facts to show that it is plausible that [they] violated one of [Zargari's] clearly established constitutional rights" in Counts II and III. (Mot. 3). As such, Tiguy and Miyar assert they are entitled to qualified immunity from the constitutional claims raised by Zargari. (*See id.* 1). Tiguy and Miyar further argue Zargari fails to state a claim for false arrest or malicious prosecution for which the Government could be held liable under the FTCA in Count I. (*See id.* 4). And because King is not a federal employee, the Government maintains it has not waived its sovereign immunity for claims arising from King's actions. (*See id.*). Zargari contends he has sufficiently alleged a violation of his Fourth Amendment rights by Tiguy and Miyar,[2] and as to Count I for a violation of the FTCA, Zargari argues he has properly alleged King was an employee of the United States. (*See* Resp. 3-5).

The Court first addresses the arguments concerning the sufficiency of Zargari's claims in Counts II and III against Tiguy and Miyar. Given the conclusion those counts fail to state claims for relief, the Court next turns to Zargari's claim against the Government in Count I, analyzed in the context of its plausibility with respect to subject matter jurisdiction existing only as to Defendant King's actions.

### A. Counts II & III

Tiguy and Miyar raise their qualified immunity as a defense to Zargari's constitutional

---

[2] Neither malicious prosecution nor false arrest constitutes a Fifth Amendment violation for purposes of a *Bivens* suit. *See Albright v. Oliver*, 510 U.S. 266, 274-75 (1994); *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003).

6

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

law claims in Counts I and II. (*See* Mot. 1). According to Zargari, he has properly alleged a violation of his Fourth Amendment rights in Counts II and III pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (*See* Resp. 2–3).

*Bivens* announced the rule that federal employees acting under color of law may be sued in their individual capacities for violating a person's constitutional rights. *See Corbett v. Transp. Sec. Admin.*, No. 12-20863-CV, 2012 WL 8963931, at *4 (S.D. Fla. Nov. 16, 2012) (citations omitted). "To state a claim for relief in accordance with *Bivens*, a plaintiff must allege that a federal agent, by act or omission under color of federal authority, deprived him of a right, privilege, or immunity secured by the United States Constitution." *Id.* (citation omitted). Under certain circumstances, a law enforcement officer may be entitled to raise qualified immunity as a defense to a *Bivens* action. *Id.* (citation omitted).

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (citation omitted). The Eleventh Circuit uses a two-step approach to determine whether a government official is protected by qualified immunity: (1) first, the government official must show the conduct complained of took place "within the scope of his discretionary authority;" and (2) then, the burden shifts to the plaintiff to show the government official violated clearly established statutory or constitutional law. *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563-64 (11th Cir. 1988)).

Miyar and Tiguy were clearly engaged in the discretionary functions of investigating

7

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

potential criminal activity and executing and obtaining a warrant for an arrest. *See, e.g.*, *Brock v. City of Zephyrhills*, 232 F. App'x 925, 927–28 (11th Cir. 2007) ("The acts of obtaining and executing a warrant for an arrest and performing a search of a vehicle and residence qualify as discretionary functions of law enforcement officers."). As such, Zargari must properly plead Miyar and Tiguy violated clearly established law in order to divest them of their qualified immunity. *See Courson*, 939 F.2d at 1487.

A government official violates a clearly established law and loses the protection of qualified immunity when: (1) the facts show a constitutional right has been violated, and (2) the law clearly established the existence of that right at the time it was violated. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).[3] The test focuses on whether the law in effect at the time of the alleged violation provided the government agents with "fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (alterations added). In this jurisdiction, only decisions of the U.S. Supreme Court, the Eleventh Circuit, and the highest court of the state may clearly establish the law at the time of an alleged violation. *See Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 827 n.4 (11th Cir. 1997) (citations omitted). For the law to be "clearly established," it must be so clear that every objectively reasonable official understands it to prohibit the act in question. *See Vinyard v. Wilson*, 311 F.3d 1340, 1353 (11th Cir. 2002) (citations omitted). This typically requires that the particular constitutional right in question be clearly established "in light of the specific

---

[3] Although both elements of the test must be met before a government official establishes he or she is entitled to qualified immunity, the analysis may be done in whichever order the district court finds most appropriate. *See Pearson*, 555 U.S. at 236.

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

context of the case, not as a broad general proposition . . . ." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The purpose of this requirement is to "ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Id.* at 206.

The Court now analyzes whether Miyar and Tiguy's qualified immunity bars the claims of malicious prosecution and false arrest stated in Counts II and III.

       *1.     Malicious Prosecution*

"An arrest without probable cause violates the Fourth Amendment and supports a claim for malicious prosecution under both state and federal law." *Ramirez v. City of Tampa*, No. 8:10-cv-1819-T-23TBM, 2011 WL 2532406, at *3 (M.D. Fla. June 24, 2011) (internal citations omitted). As explained by the Eleventh Circuit, to properly state a claim for malicious prosecution under section 1983, a plaintiff must allege the elements of the common law tort of malicious prosecution, and a violation of his Fourth Amendment right to be free from unreasonable seizures. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (citation omitted). Under Florida law, the plaintiff must allege:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

*Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994) (citations omitted), *disapproved of on other grounds by Weingrad v. Miles*, 29 So. 3d 406 (Fla. 3d DCA 2010).

9

CASE NO.   13-23806-CIV-ALTONAGA/O'Sullivan

It is clearly established law that "[b]ecause federal grand jury proceedings are *ex parte*, the return of an indictment is *prima facie* evidence of probable cause in an action for malicious prosecution." *Ware v. United States*, 971 F. Supp. 1442, 1462–63 (M.D. Fla. 1997) (alteration added; internal citation omitted) (citing *Burns v. GCC Beverages, Inc.*, 502 So. 2d 1217, 1219 (Fla. 1986)). A plaintiff may rebut the *prima facie* effect of a grand jury indictment by "a showing of specific evidence that there was a deliberate and malicious fraud perpetrated on the grand jury to induce them to indict" plaintiff. *Kelly v. Serna*, 87 F.3d 1235, 1242 (11th Cir. 1996).

Despite the numerous conclusory allegations concerning the lack of probable cause for Zargari's arrest scattered throughout the Amended Complaint, a federal grand jury determined there was sufficient probable cause to arrest Zargari (*see* Mot., Ex. C [ECF No. 54-3]).[4] Consequently, Zargari must sufficiently allege Tiguy and Miyar committed fraud, perjury, or otherwise acted improperly in the acquisition of Zargari's indictment. *See Kern v. Modernage Furniture Corp.*, 125 So. 2d 893, 894 n.1 (Fla. 3d DCA 1961) ("[T]he numerical weight of authority . . . is to the effect that where the complaint in an action for malicious prosecution shows on its face that a committing magistrate found probable cause to bind plaintiff over to a higher court, the plaintiff must, in his pleading go further than a mere allegation of want of probable cause, and must plead facts showing fraud, perjury, or other improper means to overcome the

---

[4] "A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment[, and] [p]ublic records are among the permissible facts that a district court may consider." *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (alterations added; citations omitted). The Amended Complaint references the indictment and the probable cause affidavit [ECF No. 54-3] (*see* Am. Compl. ¶¶ 35, 36, 39, 43), and Zargari does not dispute the authenticity of these public documents.

10

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

presumption of probable cause arising from the fact that he was bound over by the magistrate." (alterations added; citation omitted)).

In this vein, Zargari broadly alleges "Defendants fabricated evidence and presented false statements to support [his] arrest and prosecution . . . ." (Am. Compl. ¶ 27). Zargari also claims "Tiguy signed a probable cause affidavit that he knew contained false statements to support probable cause to arrest/prosecute Zargari" (*id.* ¶ 43), and Tiguy and other FBI agents "intentionally made a fraudulent video to support probable cause to arrest/prosecute [him]" (*id.* ¶ 42). Zargari claims Miyar "made false incriminating statements against him" (*id.* ¶ 17), and "falsely indicated to prosecutors that Zargari admitted to King that Zargari stole a cell phone belonging to customer Messimo Furtan," which was used to support the decision to arrest and prosecute Zargari (*id.* ¶ 37).[5]

Zargari does not explain the factual circumstances surrounding most of these allegedly false statements, precisely who — besides the generic "prosecutors" — the statements were made to, when the statements were made, or what the majority of the statements actually were. Although Zargari does provide *some* details regarding an allegedly false statement made by Miyar, Zargari does not sufficiently explain how this statement was used to arrest and prosecute him, thus failing to satisfy the causation element for a claim of malicious prosecution. *See, e.g.*, *Diaz-Martinez v. Miami-Dade Cnty.*, No. 07-20914-CIV, 2009 WL 2970468, at *13 (S.D. Fla.

---

[5] The Court does not give credence to the general allegations against "[t]he FBI" contained in paragraphs 40 and 41 of the Amended Complaint, as those allegations lack specificity and are insufficient to sustain a claim against either Miyar or Tiguy. *See, e.g.*, *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010) (citation omitted).

CASE NO.   13-23806-CIV-ALTONAGA/O'Sullivan

Sept. 10, 2009); *Ramirez*, 2011 WL 2532406, at *3 ("Rather, the plaintiffs must allege (in good faith and with supporting facts) that an agent either knowingly provided false information to the prosecutor or otherwise improperly influenced the prosecutor."). Moreover, the conclusory, unsupported recitations that Miyar and Ziguy acted with knowledge of the falsity of these statements are insufficient. *See Padrevita v. City of Lake Worth*, 367 So. 2d 739, 742 (Fla. 4th DCA 1979) ("Averments of conspiracy and of the knowledge of the falsity of the charge and the sprinkling of the complaint with vituperative epithets such as 'premeditatedly, wickedly, and with studied care and protected deliberation' are not allegations of fraud." (citation omitted)).

As to the allegations against Tiguy regarding the "fraudulent video" (Am. Compl. ¶ 42), the Amended Complaint does not state when or to whom the video was shown.  In fact, neither the indictment nor the probable cause affidavit mentions the video.  Although it is unclear from the Amended Complaint and Zargari's Response, it appears the video was only played at trial.  (*See id.*; Resp. 4).  In any event, Zargari's criminal defense attorney presented "the unedited version" of the video at trial.  (Am. Compl. ¶ 42).  Clearly, the presentation of a video during Zargari's trial and after his indictment could not logically form the basis for the probable cause determination.  As such, the facts alleged concerning the video are insufficient to establish a malicious prosecution claim against Tiguy.

And with regard to Tiguy's signature on the probable cause affidavit which allegedly "contained false statements" known by Tiguy to be untrue, Zargari has not specified which particular statements within the report Tiguy knew to be false.  Even more damaging to the claims against Tiguy, Zargari has not alleged any factual support for his blanket assertions Tiguy knew

12

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

the probable cause affidavit contained false statements. Consequently, this allegation is not entitled to a presumption of truth, and Zargari has failed to sufficiently plead a claim for malicious prosecution against Tiguy. *See Iqbal*, 556 U.S. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").

Regarding the accusations made against Miyar, the Amended Complaint only points to the cellular phone incident between Zargari, King, and Messimo Furtan. Based on the facts alleged, it is clear Miyar was relying on information provided to him by King, the officer working undercover. (*See* Am. Compl. ¶¶ 23, 36, 37). Even assuming King falsified evidence, Miyar cannot be liable for relying on the attestations of King unless it is alleged Miyar had reason to believe King had falsified evidence. *See, e.g.*, *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 946 (11th Cir. 2008) ("Regardless of whether Baaske falsified evidence against Williams, there is no evidence that Carey and McIntosh knew that Baaske's representations might be false. Thus, under Florida's 'fellow officer rule,' Carey and McIntosh were justified in relying on the information provided by Baaske.").

Because Zargari has not alleged, even in conclusory terms, that Miyar had reason to doubt the information provided by King, Miyar's reliance on King's statement (whether false or not) was justified. Consequently, Zargari has failed to sufficiently plead a malicious prosecution claim against Miyar. And as Zargari has not adequately stated a Fourth Amendment violation, certainly both Miyar and Tiguy are entitled to qualified immunity on his malicious prosecution claim. *See Wood*, 323 F.3d at 882–83 ("Because [the plaintiff] has not shown a Fourth Amendment violation,

13

CASE NO.   13-23806-CIV-ALTONAGA/O'Sullivan

Trooper Kesler is entitled to qualified immunity on Wood's [section] 1983 malicious prosecution claim." (alterations added)).

>    2.    *False Arrest*

"A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) (citation omitted). In contrast, an arrest made with probable cause is an absolute bar to a claim for false arrest under federal law and Florida law. *See Sullivan v. City of Pembroke Pines*, 161 F. App'x 906, 910 (11th Cir. 2006); *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996); *Williams v. United States*, No. 6:08-cv-1771-Orl-31GJK, 2010 WL 1408398, at *8 (M.D. Fla. Apr. 2, 2010) ("The existence of probable cause, at the time of a seizure, will bar a *Bivens* claim for false arrest." (citations omitted)).

Whether probable cause to arrest exists depends on whether a reasonably prudent person, under the same circumstances and possessing the same facts as the arresting officer, would have believed the suspect has committed or was committing an offense. *See Knight v. Jacobson*, 300 F.3d 1272, 1274 (11th Cir. 2002)). Probable cause is determined under the totality of the circumstances, based on an objective reasonableness standard; thus, the subjective belief of the arresting officer is of no consequence. *See Rankin v. Evans*, 133 F.3d 1425, 1433–34 (11th Cir. 1998). The probable cause determination "does not require convincing proof . . . and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Epstein v. Toys-R-Us Del., Inc.*, 277 F. Supp. 2d 1266, 1271 (S.D. Fla. 2003) (alterations in original; quoting *Rankin*, 133 F.3d at 1436).

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

For the same reasons expressed in Part III.A.1, *supra*, Zargari has not pleaded facts sufficient to overcome the *prima facie* effect of the grand jury's probable cause determination. As such, Zargari has not adequately stated a claim for false arrest against Miyar and Tiguy. And because Zargari has failed to properly plead Miyar or Tiguy committed a constitutional violation, again the Court does not reach the question whether the right was clearly established. *See Dimanche v. Anderson*, No. 4:13-cv-351-MW/CAS, 2013 WL 4830802, at *1 n.2 (N.D. Fla. Sept. 10, 2013) ("Where there is a finding that the complaint failed to allege the violation of a constitutional violation at all, there is no need to proceed further an[d] determine whether the right was clearly established because the complaint fails to state a claim." (alteration added)).

### B. Count I

The Federal Defendants maintain Zargari cannot sustain an action against the Government based on the purported wrongdoing of Miyar and Tiguy because Zargari has failed to state a plausible claim against Miyar and Tiguy. (*See* Mot. 4). The Federal Defendants are correct. But Zargari also relies on King's conduct to support his FTCA claim in Count I. To this, the Federal Defendants assert King is not "a[n] officer of the United States," Zargari's allegations regarding King cannot form the basis of any claim against the Government, and the Court therefore lacks subject-matter jurisdiction over Count I. (*Id.*). The Court examines the jurisdictional question below.

It is well established that suing the United States is permitted only in limited circumstances. *See United States v. Testan*, 424 U.S. 392, 399 (1976). As a sovereign, the Government must consent to be sued. *See id.* Absent such consent, dismissal of the suit for

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

lack of subject-matter jurisdiction is required. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). And any waiver of its sovereign immunity must be strictly construed in favor of the United States. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992).

Pursuant to the FTCA, the United States has expressly permitted itself to be sued in federal district court by waiving its sovereign immunity

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). With regard to assault, battery, false imprisonment, false arrest, malicious prosecution, and abuse of process, the United States has only waived sovereign immunity for claims that allege those "acts were committed by an officer who is charged with federal powers." *Henin v. Cancel*, 708 F. Supp. 2d 1315, 1319 (S.D. Fla. 2010) (citation omitted); *see also Misick v. United States*, No. 06-22714-CIV, 2007 WL 4557166, at *2 (S.D. Fla. Dec. 21, 2007) ("But certain enumerated acts — assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution — if committed by *investigative or law enforcement officers,* are actionable." (emphasis in original; citation omitted)). "For the purposes of this subsection, 'investigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrest for violations of Federal law." 28 U.S.C. § 2680(h).

Zargari contends King is "a Police Officer employed by the City of Miami Beach and as an undercover agent for the FBI, [was] either employed by [the Government] or serving [the

16

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

Government] as an independent contractor or otherwise." (Am. Compl. ¶ 7). Additionally, Zargari points to the January 27, 2011 FBI transcript, where the FBI references King as an "Undercover Employee." (Resp., Ex. 4 [ECF No. 57]). But the Declaration of Helga R. Gonzalez, Administrative Officer of the FBI's Miami Division, makes clear King is not a current or former FBI employee. (*See* Mot., Ex. E ¶¶ 2, 3 [ECF No. 54-5]). Further, according to Assistant Special Agent in Charge Brenda L. Moxley of the FBI's Miami Division, King has never been deputized to a task force at the Miami Division or given security clearance by the Miami Division. (*See* Mot., Ex. F ¶¶ 5–7 [ECF No. 54-6]). Consequently, the Government's limited waiver of sovereign immunity under the FTCA for the enumerated intentional torts does not apply to the actions of King. *See Metz v. United States*, 788 F.2d 1528, 1532 (11th Cir. 1986); *see also Henin*, 708 F. Supp. 2d at 1319 ("According to the Declaration of Gibson, the Miccosukee Tribe has not entered into a 'deputation agreement' with the BIA . . . . As a result, Miccosukee officers are not empowered to enforce federal law. Even though the alleged assault and battery may have been committed by employees of the United States, the Miccosukee police officers do not fall within the exception — for assault and battery claims — to the exception — for investigative or law enforcement officers — to the FTCA." (internal citations omitted)). And as Zargari has not sufficiently stated a claim for malicious prosecution or false arrest against Miyar or Tiguy, Count I is properly dismissed.

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 54]** is **GRANTED**. Counts

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

I, II, and III of the Amended Complaint are **DISMISSED**.

It is **FURTHER ORDERED** that Zargari's related Motion for Extension of April 18[,] 2014 Deadline to Amend Pleadings **[ECF No. 74]** is **GRANTED**. Zargari may submit a second amended complaint on or before **May 7, 2014**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of April, 2014.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record;
 Plaintiff, *pro se*