UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

**SIAVASH ZARGARI**,

      Plaintiff,
vs.

**UNITED STATES OF AMERICA**,
*et al.*,

      Defendants.
      _____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Luis King's ("King['s]") Motion for Summary Judgment ("Motion") [ECF No. 123], filed on March 11, 2015. Plaintiff, Siavash Zargari ("Zargari"), submitted his *pro se* Response . . . ("Response") [ECF No. 131], entered on the docket March 23, 2015.[1] King filed a Reply . . . ("Reply") [ECF No. 137], on April 7, 2015. The Court has carefully considered the parties' written submissions, including exhibits;

---

[1] By Order dated March 24, 2015 ("March 24 Order") [ECF No. 133], the Court noted the Response failed to comply with Local Rule 56.1(a), which requires a Statement of Material Facts ("SMF") in response to a motion for summary judgment. Zargari was ordered to provide a SMF in response to King's Statement of Facts . . . ("King SMF") [ECF No. 124]. The Court specifically reminded Plaintiff a failure to controvert the facts in the King SMF would result in deeming the facts admitted. (*See* Order 1 (citing Local Rule 56.1(b))). Zargari subsequently filed a Response to Def[e]ndant's Statement of Facts ("Zargari SMF Response") [ECF No. 135, pp. 23–29], and a Statement of Facts ("Zargari SMF") [ECF No. 135, pp. 29–53], both of which the Court accepts. However, his filing also purports to amend the Response. (*See* Amended Memorandum . . . 1 ("Amended Memorandum") [ECF No. 135]). The filing of the Amended Memorandum without leave violates the Local Rules. *See* S.D. FLA. L.R. 7.1(c) ("Each party opposing a motion shall serve *an* opposing memorandum of law . . . . No further or additional memoranda of law shall be filed without prior leave of Court." (emphasis and alteration added)). The March 24 Order did not permit the filing of an amended response, and the Court declines to consider new arguments, if any, contained in the Amended Memorandum.

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

Zargari's audio and video evidence;[2] and applicable law.

## I. BACKGROUND

This dispute arises out of an investigation in 2010 and 2011 of "an international criminal organization by the Federal Bureau of Investigation, which resulted in the indictment and arrest of at least nineteen individuals, including" Zargari. (Mot. 1; *see also* King SMF ¶¶ 2, 6). King, a Miami Beach police officer, went undercover to investigate fraudulently run clubs in Miami Beach, posing as a "dirty cop working off-duty at the nightclubs as a bouncer/doorman." (King SMF ¶ 4 (citations and internal quotation marks omitted)).[3] Zargari was a principal of K & S Entertainment ("K&S"). (*See* Zargari SMF Resp. ¶ 10). K&S subleased a portion of its premises to Tangia Club,[4] where King worked undercover. (*See id.* ¶¶ 10, 14). Ciao Miami Beach LLC ("Ciao"), an entity run by Albert Takhalov ("Takhalov"), operated Tangia Club. (*See* King SMF ¶¶ 11–12). Tangia Club was one of the businesses identified as being run fraudulently. (*See id.* ¶ 15; *see also* Zargari SMF Resp. ¶ 15).

Zargari "had no authority in Tangia club business" operations. (Zargari SMF Resp. ¶

---

[2] Zargari filed five compact discs of audio and video files and a summary of the files. (*See* Zargari Files . . . ("Summary") [ECF No. 134]). The Court has reviewed the Summary and the audio and video content it identifies.

[3] Zargari states he never thought King was a "dirty cop" but a "normal" police officer. (Zargari SMF Resp. ¶ 4). Zargari admits King was in fact working undercover (*see id.* ¶ 6), and does not dispute (*see id.*) the fact King "witness[ed] firsthand the operation of the fraudulent scheme, collecting evidence and intelligence and regularly reporting it to FBI agents leading the investigation" (King SMF ¶ 6 (alteration added)). In fact, Zargari alleges King pretended to be a corrupt Miami Beach police officer aiding the fraudulent business scheme, recording evidence for later use. (*See* Second Amended Complaint . . . ("SAC") ¶¶ 37, 39 [ECF No. 78]).

[4] The parties refer to the club as "Tangia Club" or "Club Tangia"; the Court refers to it uniformly as "Tangia Club." Zargari operated an entity known as "Tangia Restaurant and Lounge" separate from Tangia Club. (King SMF ¶ 13; *see also* Zargari SMF Resp. ¶ 13).

2

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

12). However, Zargari does not dispute (*see id.* ¶ 10) the fact "Tangia Club [] was closely affiliated with K&S" (King SMF ¶ 10 (alteration added; citations omitted)), even if the two were separate legal entities. In particular, Ciao paid K&S a portion of its sales revenues in return for subleasing the space for Tangia Club from K&S. (*See id.* ¶ 11; Zargari SMF Resp. ¶ 11). It is undisputed King observed Zargari "interacting with known members of the criminal organization, including [] Takhalov . . . and . . . associating himself with Tangia Club . . . ." (King SMF ¶ 18 (alterations added; citations omitted); *see also* Zargari SMF Resp. ¶ 18).

The investigation resulted in many individuals' convictions of various crimes, including jury verdicts of guilty as to Takhalov and two others in federal court. (*See United States v. Simchuk*, No. 11-20279-CR-RNS (S.D. Fla.)). Zargari was prosecuted in the same case for wire fraud, conspiracy to commit wire fraud, and conspiracy to defraud the federal government. (*See id.*; *see also* SAC ¶ 13). After a trial, he was acquitted of all counts. (*See* SAC ¶ 15; *see also* King SMF ¶ 22).

Zargari was indicted by a federal grand jury in part based on statements made or attributed to King. (*See generally* SAC; *see also* Indictment [ECF No. 83-3]). Zargari alleges three of King's statements presented to the grand jury were improper. (*See generally* SAC). These are subsections h, i, and j of paragraph 22 of the Affidavit of Alex Tiguy ("Tiguy Affidavit") [ECF No. 125-6], containing information from King in support of Criminal Complaint. Paragraph 22 states King "witnessed the Organizers and Investors participate in the fraud"; Zargari "contacted [King] about a victim who was disputing his bill at a club and wanted him arrested" and "took a cell phone from a victim at the club . . . in order to use it as evidence

3

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

against the victim challenging the charges with his credit card company"; and King overheard Zargari and Takhalov "laughing about how they give customers shots of vodka to get them drunk and girls only get water . . . ." (Tiguy Aff. 10–11 (alterations added)).[5]

The SAC alleges three causes of action against King: Count IV, false arrest and malicious prosecution for violations of the Fourth and Fifth Amendments;[6] Count V, malicious prosecution against King pursuant to 42 U.S.C. section 1983; and Count VI, malicious prosecution against King pursuant to Florida common law. (*See generally* SAC).[7] King moves for summary judgment on all three counts. (*See* Mot. 1).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P 56(a). A party asserting a fact cannot be genuinely disputed must cite to the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," or show "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1) (alteration

---

[5] While the SAC includes an allegation about the Zargari-Takhalov laughing conversation, the Response, Zargari SMF, and Zargari SMF Response do not discuss it in any detail, and therefore the Court does not address the allegation in this Order.

[6] Neither malicious prosecution nor false arrest constitutes a Fifth Amendment violation for purposes of a *Bivens* suit. *See Albright v. Oliver*, 510 U.S. 266, 274–75 (1994); *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). Accordingly, summary judgment is granted in favor of King to the extent Count IV asserts a Fifth Amendment violation.

[7] By Order [ECF No. 86], the Court dismissed Zargari's claims against all other Defendants.

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

added). The Court need only consider cited materials from the record. *See* FED. R. CIV. P. 56(c)(3). In making its assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990) (citation omitted). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ." FED. R. CIV. P. 56(e) (alterations added). Indeed, the "non-movant must adduce significant probative evidence that would be sufficient for a jury to find for the non-movant." *Riebsame v. Prince*, 267 F. Supp. 2d 1225, 1231 (M.D. Fla. 2003) (citations omitted).

"An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (citation and internal quotation marks omitted)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. July 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). "[T]here is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find" for the nonmoving party. *Anderson*, 477 U.S. at 254 (alteration added). "When opposing parties tell two different stories, one of

5

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Motion addresses King's qualified-immunity defense, and the parties dispute whether King falsely arrested Zargari and maliciously prosecuted him. But "[t]o deny summary judgment any time a material issue of fact remains . . . could undermine the goal of qualified immunity to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005) (some alterations added; footnote call number, citations, and internal quotation marks omitted). Thus,

> [w]hen conducting a qualified immunity analysis, district courts must take the facts in the light most favorable to the party asserting the injury. . . . When a district court considers the record in this light, it eliminates all issues of fact. By approaching the record in this way, the court has the plaintiff's best case before it. With the plaintiff's best case in hand, the court is able to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without having to assess any facts in dispute.

*Id.* (alterations added; internal citation omitted).

### III.   ANALYSIS

King argues summary judgment is warranted because Zargari cannot point to evidence probable cause was lacking to arrest and prosecute him, and King did not make knowingly false statements in the Tiguy Affidavit. (*See generally* Mot.). Zargari responds King knew the statements in the Tiguy Affidavit were false, King made them with malice, and Zargari's arrest and prosecution were without probable cause. (*See* Resp. 8).

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

While King presents various grounds seeking summary judgment in his favor, a common thread uniting all of Zargari's claims is the requirement he prove a lack of probable cause. To succeed in Count IV, a claim pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for false arrest or malicious prosecution, Zargari must show a lack of probable cause for his arrest and prosecution. *See Ramirez v. City of Tampa*, No. 8:10-cv-1819-T-23TBM, 2011 WL 2532406, at *3 (M.D. Fla. June 24, 2011) ("To state a claim for malicious prosecution, the plaintiff must allege . . . there was an absence of probable cause for the original proceeding . . . ." (alteration added; citations omitted)); *Williams v. United States*, No. 6:08-cv-1771-Orl-31GJK, 2010 WL 1408398, at *8 (M.D. Fla. Apr. 2, 2010) ("The existence of probable cause, at the time of a seizure, will bar a *Bivens* claim for false arrest." (citations omitted)).

To succeed in Count V, the section 1983 claim for malicious prosecution, Zargari must prove the elements of the common law tort of malicious prosecution. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (citation omitted). Thus to succeed in both Count V and Count VI — a claim for Florida common law malicious prosecution — Zargari must show "there was an absence of probable cause for the original proceeding . . . ." *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994) (citations omitted), *disapproved of on other grounds by Weingrad v. Miles*, 29 So. 3d 406 (Fla. 3d DCA 2010).

Further, King raises qualified immunity for the federal causes of actions in Counts IV and V. "Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly

7

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (citation omitted). The Eleventh Circuit uses a two-step approach to determine whether a government official is protected by qualified immunity: (1) first, the government official must show the conduct complained of took place "'within the scope of his discretionary authority'"; and (2) then, the burden shifts to the plaintiff to show the government official violated clearly established statutory or constitutional law. *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563–64 (11th Cir. 1988)).

Based on the undisputed facts, King was clearly engaged in the discretionary functions of investigating potential criminal activity and seeking arrest warrants. *See Brock v. City of Zephyrhills*, 232 F. App'x 925, 927–28 (11th Cir. 2007) (per curiam) ("The acts of obtaining and executing a warrant for an arrest and performing a search of a vehicle and residence qualify as discretionary functions of law enforcement officers."). As such, Zargari must show King violated clearly established law in order to divest him of qualified immunity. *See Courson*, 939 F.2d at 1487.

A government official violates clearly established law and loses the protection of qualified immunity when: (1) the facts show a constitutional right has been violated, and (2) the law clearly established the existence of that right at the time it was violated. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted).[8] The test focuses on whether the law in effect at the time of the alleged violation provided the government agents with "fair warning that

---

[8] Although both elements of the test must be met before a government official establishes he or she is entitled to qualified immunity, the analysis may be done in whichever sequence the district court finds most appropriate. *See Pearson*, 555 U.S. at 236.

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (alteration added). In this jurisdiction, decisions of the U.S. Supreme Court, the Eleventh Circuit, and the highest court of the state may clearly establish the law at the time of an alleged violation. *See Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997) (citations omitted). For the law to be "clearly established," it must be so clear that every objectively reasonable official understands it to prohibit the act in question. *Vinyard v. Wilson*, 311 F.3d 1340, 1353 (11th Cir. 2002) (citations omitted). This typically requires that the particular constitutional right in question be clearly established "in light of the specific context of the case, not as a broad general proposition . . . ." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The purpose of this requirement is to "ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Id.* at 206.

The Court now analyzes whether Zargari has adduced sufficient probative evidence his arrest and prosecution were made without probable cause, the prerequisite to succeed on all three claims. "Probable cause is a 'reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.'" *Biondolillo v. United States*, No. 05-21014-CIV, 2007 WL 5396950, at *2 (S.D. Fla. Apr. 4, 2007) (quoting *Burns v. GCC Beverages, Inc.*, 502 So. 2d 1217, 1219 (Fla. 1986)). Probable cause is determined under the totality of the circumstances, based on an objective reasonableness standard; thus, the subjective belief of the arresting officer is of no consequence. *See Rankin v. Evans*, 133 F.3d 1425, 1433–34 (11th Cir. 1998) (citations omitted). The probable cause determination "does not require convincing

9

proof" and "need not reach the same standard of conclusiveness and probability as the facts necessary to support a conviction." *Epstein v. Toys-R-Us Del., Inc.*, 277 F. Supp. 2d 1266, 1271 (S.D. Fla. 2003) (brackets, citation, and internal quotation marks omitted).

"Because federal grand jury proceedings are *ex parte*, . . . the return of an indictment is *prima facie* evidence of probable cause in an action for malicious prosecution." *Ware v. United States*, 971 F. Supp. 1442, 1462 (M.D. Fla. 1997) (alteration added; citations omitted). There is no requirement the government present its full case-in-chief to a grand jury or magistrate judge; indeed, the "government is under no duty to bring exculpatory evidence to the grand jury's attention." *United States v. Waldon*, 363 F.3d 1103, 1109 (11th Cir. 2004) (citation omitted).

A plaintiff may rebut the *prima facie* effect of a grand jury indictment by "a showing of specific evidence that there was deliberate and malicious fraud perpetrated on the grand jury to induce [it] to indict" the plaintiff. *Kelly v. Serna*, 87 F.3d 1235, 1242 (11th Cir. 1996) (alteration added); *see also Kern v. Modernage Furniture Corp.*, 125 So. 2d 893, 894 n.1 (Fla. 3d DCA 1961) (in malicious prosecution action, requiring "facts showing fraud, perjury, or other improper means to overcome the presumption of probable cause arising from the fact that he was bound over by the magistrate" (citation omitted)). "An indictment procured with knowingly false testimony and/or intentional fabrication of evidence would not support a probable cause finding." *Biondolillo*, 2007 WL 5396950, at *2 (footnote call number and citation omitted). In contrast, a negligent investigation alone is not sufficient to show a deliberate and malicious fraud on the grand jury. *See id.* at *2 n.5. Further, the Court "need not entertain conclusory and unsubstantiated allegations of fabrication of evidence" of a plaintiff seeking to avoid summary judgment in a

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

defendant's favor in a malicious prosecution action. *Id.* at *2 (citations and internal quotation marks omitted).

A federal grand jury determined there was sufficient probable cause to arrest Zargari. (*See* Indictment). Thus, the burden is on Zargari to show King committed fraud, perjury, or otherwise acted improperly in the acquisition of his indictment, *see Kelly*, 87 F.3d at 1242; this he tries to do in a number of ways (*see generally* Resp.). The Court addresses Zargari's contentions in turn.[9]

### A. Evidence Zargari Was Unaware of the Criminal Activities

Zargari points to two instances in which members of the criminal conspiracy told King Zargari did not "know about" the fraudulent business or "how this business runs." (Resp. 9 (citations omitted); *see also* Zargari SMF ¶ 21). These citations to the record fail to establish knowingly false testimony and/or fabrication of evidence by King. *See Biondolillo*, 2007 WL 5396950, at *2. An officer in King's position would be entitled to disregard statements made by known or suspected criminal conspirators or their affiliates Zargari was not involved in the criminal conspiracy; it would be absurd to require an undercover officer to credulously accept all information received from investigation targets, especially when — as with King — the officer worked undercover for months building a case. Because King did not "unreasonably disregard[]

---

[9] Zargari includes a host of apparently irrelevant facts in the Response, Zargari SMF Response, and Zargari SMF — arguing, for instance, King was motivated by the prospect of overtime pay or a desire to arrest as many individuals as possible instead of stopping the investigation when some suspects were identified. (*See, e.g.*, Resp. 10, 20). Furthermore, the mere fact Zargari was found not guilty after a jury trial does not "prove [King's] intentional acts toward Zargari" (*id.* 15 (alteration added)); otherwise, every not-guilty verdict would automatically result in a successful malicious prosecution lawsuit. Because these and similar statements do not bear upon the Court's analysis, this Order does not address them further.

11

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

certain pieces of evidence to establish probable cause," Zargari's argument on this ground fails. *Kingsland*, 382 F.3d at 1233 (alteration added).

### B. Statements Made by King

Zargari points to a number of statements made by King while working undercover. For instance, he cites a recording in which King tells Ana Kilimatova ("Kilimatova"),[10] an employee or associate of Tangia Club, he thinks Zargari does not know how the fraudulent business is being run. (*See* Resp. 9 (citation omitted); *see also* Zargari SMF ¶ 5 (citation omitted)). The Court readily discounts the importance of all these statements, as there is nothing indicating King's statements made while undercover evince his actual knowledge. Obviously, much of what King said undercover was false or misleading — otherwise he would not be working *undercover*. These statements thus clearly fail to prove King offered or procured "knowingly false testimony and/or intentional fabrication of evidence . . . ." *Biondolillo*, 2007 WL 5396950, at *2 (footnote call number and citation omitted).

### C. The March 2011 Cell Phone Incident

The Tiguy Affidavit states, based on King's investigation, Zargari "took a cell phone from a victim at the club and later stated that he had done so in order to use it as evidence against the victim challenging the charges with his credit card company." (Tiguy Aff. 11). Zargari says he never did this, blaming the March 2011 incident on women hired by Takhalov who worked at Tangia Club. (*See* Resp. 10). Zargari repeatedly insists King included information in the Tiguy Affidavit that was knowingly false or intentionally fabricated. He argues if King's

---

[10] Kilimatova's name is spelled incorrectly by Zargari. (*See* Indictment 1).

12

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

statement about Zargari wanting to use the phone as leverage in a credit-card dispute "was true, [K]ing should have recording [sic] evidence of such [an] important conversation . . . [.] King had no evidence against" Zargari on this point. (Zargari SMF ¶ 10 (alterations added)). However, pointing out a lack of evidence is not "significant probative evidence that would be sufficient for a jury to find" King concocted false evidence. *Riebsame*, 267 F. Supp. 2d at 1231 (citations omitted). It is, instead, a mere unsupported suggestion — and the Court "need not entertain conclusory and unsubstantiated allegations of fabrication of evidence" by Zargari. *Biondolillo*, 2007 WL 5396950, at *2 (citations and internal quotation marks omitted).

Zargari further states King knew Zargari was trying to return the phone to its owner. (*See* Zargari SMF ¶ 11). The evidence Zargari cites is a conversation King recorded of Takhalov explaining the situation to King, while King was working undercover. (*See id.* (citing CD5 recording # 105 V0008 ("CD5 Recording"))). In the CD5 Recording, Takhalov states Zargari found the cell phone the day after. (*See* CD5 Recording 7:30–8:00). In a previous excerpt of the conversation, Takhalov told King he thought the victim of the phone theft was going to dispute his credit card bill on the basis his phone had been stolen. (*See id.* 3:20–30 ("This is definitely going to be a chargeback . . . .")). According to Takhalov, Zargari had already spoken to the victim to report he had the phone (*see id.* 3:02–20); thus King could have believed Zargari had taken his action — calling the victim — in order to avoid the credit card dispute Takhalov anticipated. This is, therefore, no evidence of a deliberate fraud on King's part.

The parties dispute whether Zargari "found" the cell phone or "took" it from the victim,

13

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

with Zargari noting evidence on this point from his criminal trial. King testified female employees at Tangia Club told him Takhalov had "video that [Zargari] was the one that took the cell phone" and that Takhalov said Zargari was the one who "took the phone . . . ." (Resp., Ex. TLK1 204–05 [ECF No. 132-2] (alterations added)). This testimony, and the Tiguy Affidavit's assertion Zargari took the phone, contradict Takhalov's statement to King Zargari had found the phone. (*See* CD5 Recording). Even assuming the only information King obtained about this incident is in the CD5 Recording, this is insufficient to constitute fraud or fabrication of evidence in the Tiguy Affidavit, which states King had seen the conspirators participate in the fraud in general and then details the fact Zargari had taken the phone. (*See* Tiguy Aff. 10–11 (noting King "witnessed the Organizers and Investors participate in the fraud" and stating Zargari "took a cell phone from a victim at the club")).

While the CD5 Recording suggests King did not see the cell phone incident occur, the Tiguy Affidavit does not say King *saw* Zargari take the phone or *saw* Zargari threaten a customer; it merely states what King had learned during the investigation. Even if King's statement Zargari "took" the phone was negligent, this is insufficient for Zargari to succeed in his claim. *See Biondolillo*, 2007 WL 5396950, at *2 n.5; *see also Daniels v. Bango*, 487 F. App'x 532, 537 (11th Cir. 2012) (noting an "officer recklessly disregards the truth when he should have recognized the error . . . or at least harbored serious doubts as to the facts") (alteration added; citation and internal quotation marks omitted). Zargari fails to point to sufficient record evidence King made knowingly false statements about the cell phone incident.[11]

---

[11] While Zargari also relies on evidence he told King he had found the cell phone, not taken it (*see*

14

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

D. **The March 19, 2011 Incident**

Zargari takes issue with the Tiguy Affidavit's statement he wanted a victim arrested for disputing his bill. (*See, e.g.*, Zargari SMF ¶ 62 (citing Resp., Ex. G23 ("March 19 Transcript") [ECF No. 132-1])). In support, he points to the March 19 Transcript, but this transcript of the interaction fails to show Zargari did *not* want the victim arrested. In fact, a fair reading of the March 19 Transcript indicates Zargari could have been complicit in the plan to arrest the victim, who was trying to avoid paying for something he claimed he did not order. During the interaction, King threatened the victim with arrest in front of Zargari, and Zargari soon thereafter accuses the victim of "lying[.]" (March 19 Transcript 2 (alteration added)). Later, Zargari asks the victim, "What did you have?" and the victim states, "Fine, I'll sign for the bottle of wine." (*Id.* 3). While the March 19 Transcript does not indicate Zargari explicitly asked King to arrest the victim, it certainly does not prove the reverse — that Zargari did *not* want the victim arrested. If anything, the circumstances seem to show Zargari acquiesced to King's desire to arrest the victim. Accordingly, the March 19 Transcript is insufficient to show the Tiguy Affidavit falsely describes the March 19 Incident.

E. **King's Previous Knowledge of the Fraud**

Zargari repeatedly points out King knew the women hired to work in Tangia Club — as well as Takhalov — were defrauding customers of other clubs. (*See, e.g.*, Zargari SMF ¶¶ 13, 14). He argues King "can't put [a] bunch of criminals intentionally in [Zargari's] club and later say that [Zargari] was at fault" for their actions. (*Id.* ¶ 13 (alterations added)). Regardless of the

---

Zargari SMF ¶ 22); as previously explained, King was entitled to disregard statements made to him while conducting his undercover investigation, *see* Section III.A, *supra*, especially when they were self-serving.

15

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

propriety of the undercover investigation's tactics, however, Zargari's evidence on this point merely shows King was aware certain participants would be likely to engage in fraud at Tangia Club. This does not eviscerate the truth of the statements in the Tiguy Affidavit or otherwise affect what King observed (or believed he observed) occurring with regard to Zargari at Tangia Club. This ground therefore fails to show the Tiguy Affidavit is false.

**F.  Lack of Evidence Regarding Probable Cause**

Zargari also argues more broadly the limited evidence King collected about Zargari's involvement does not constitute probable cause, despite the finding of the grand jury. (*See, e.g.*, Resp. 9–10 (arguing King knew about Zargari's "involvement and that he was not aware of their fraudulent business [] but [K]ing still tried to drag [Zargari] in to [sic] the conspiracy. . . . [T]here is no proof what so ever [sic] that [Zargari] knew about any fraud with Takhalov's business" (alterations added; citation omitted))). The Court is mindful "a grand jury indictment is merely *some* evidence of probable cause to initiate prosecution in an action for malicious prosecution." *Ware*, 971 F. Supp. at 1463 (emphasis added; citation omitted). But because probable cause is a flexible concept, requiring only "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged," *id.* at 1462 (citation and internal quotation marks omitted), the Court rejects Zargari's argument.

As previously stated, the uncontroverted facts indicate Tangia Club was closely affiliated with Zargari's business (*see* King SMF ¶ 10; *see also* Zargari SMF Resp. ¶ 10); Ciao paid K&S a portion of its sales revenues in return for subleasing the space for Tangia Club (*see* King SMF ¶

16

11; *see also* Zargari SMF Resp. ¶ 11); and King observed Zargari "interacting with known members of the criminal organization, including [] Takhalov . . . and . . . associating himself with Tangia Club . . . ."  (King SMF ¶ 18 (alterations added; citations omitted); *see also* Zargari SMF Resp. ¶ 18).   While not incontrovertible proof of guilt, these facts at a minimum provide a reasonable ground of suspicion to warrant King's belief Zargari was guilty of the charged offenses.  *See Ware*, 971 F. Supp. at 1462.  Combined with the grand jury's finding of probable cause, the Court determines Zargari cannot point to evidence there was a lack of probable cause for his arrest and prosecution.

As Zargari has not adequately proven a Fourth Amendment violation, King is entitled to qualified immunity on Counts IV and V.  *See Wood*, 323 F.3d at 882–83 ("Because [plaintiff] has not shown a Fourth Amendment violation, [defendant] is entitled to qualified immunity on [plaintiff's section] 1983 malicious prosecution claim." (alterations added)).  Further, the Court determines Count VI does not survive summary judgment, as Zargari cannot point to evidence of a lack of probable cause for his prosecution.

## IV.   CONCLUSION

Based on the foregoing analysis, it is clear Zargari has not adduced significant probative evidence there was an absence of probable cause for his arrest and prosecution.   Therefore, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 123]** is **GRANTED**.   Final judgment will be entered by separate order.

CASE NO. 13-23806-CIV-ALTONAGA/O'Sullivan

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of April, 2015.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record;
Plaintiff, *pro se*